## Case No. 16,722.

### UNITED STATES v. WILLIAMS.

[N. Y. Times, March 24, 1860.]

Circuit Court, S. D. New York. 1860.

CRIMINAL LAW — ALIBI AS A DEFENCE — BILL OF EXCEPTIONS—STAY OF PROCEEDINGS.

[1. While the experience of courts has led them to look upon the defense of an alibi with great suspicion, it is yet the duty of the jury to consider the evidence in relation thereto and give it whatever weight they think it deserves.]

[2. The court will not grant a stay of proceedings after verdict to enable counsel to prepare a bill of exceptions, where all the exceptions taken are based upon the merest technicalities, and there are none which go to the merits.]

[This was an indictment against James S. Williams for taking a letter from the post office contrary to law.]

SMALLEY, District Judge, in charging the jury, said there was no variance between the evidence and the indictment, and that the objections of the prisoner's counsel to the indictment, that there could be no conviction on the charge of having tak-

en from the post-office a letter containing a promissory note, because the note was not sufficiently described in the indictment, was not a valid one in this case. It was necessary, in order to convict the respondent, to prove that, at some time previous to the filing of the indictment, and within two years, he took a letter from the post-office, not addressed to himself, and in violation of the law. In the first place, it was necessary for government to prove that such a letter was mailed and in the post-office, and regularly under the charge of the officers of that department. In the second place, it was necessary to prove that it was taken from the office in violation of law and without right, and, in the third place, it was necessary to satisfy the jury that this respondent was the person who thus took the letter. All the evidence introduced subsequent to that period was only important as tending to fix the offence on the respondent. It was proved that a note for $3,000, was made by F. A. Williams, indorsed by Charles Johnson, payable at three months, which was mailed to the Bank of Norwalk on the 12th or 13th of December, or sent by express. There was little doubt that it was received at the bank. There was no conflicting evidence on that point. It was proved that the note was re-mailed to F. A. Williams, with a letter telling him that the bank could not discount the note at three months, but if it was changed to a two months note the bank would; and that a letter with the words "From the Norwalk Bank" printed on it, was received in the post-office in this city, and laid out to be advertised, and that a letter directed to F. A. Williams was advertised on the 23d of December, as charged. It was proved that some one brought a note, altered from a three to a two months' note, to Adams Express Company, and wrote some lines on a sheet of paper, signed it "F. A. Williams," and sent it by the express to the bank; that the letter and note were received; that the net receipt of the note, after deducting discount and expenses— $2,971—was, on the 27th of December, sent by the express company to the address of F. A. Williams, New York; that it was delivered to the same person who had called before, and his receipt taken; and that neither F. A. Williams nor Charles Johnson took a letter containing the note from the post-office, or saw it after it was inclosed to Norwalk. Therefore, the conclusion would seem to be irresistible that some one tortiously took the letter containing the note from the post-office, and probably there would be as little doubt but that the person who presented the note on the 24th of December, at the express office, and received the money package on the 28th, was the same person who tortiously took the letter from the post-office. So that it probably came down to this point: Who was the person who presented that note to the express office on the 24th of December, and obtained the money on the 28th? The judge recalled the evidence upon which the prosecution rested,—the testimony that the respondent was in the habit of examining the list of advertised letters; that he frequently inquired at the post-office for letters directed to men named Williams, with different Christian names from his own; that he had received one letter there not addressed to him; and that he was the man who took the note to the express office. He presented the evidence brought by the respondent to meet some of this testimony, and commented upon the absence of evidence for the defence in some cases. The court then adverted to the proof of handwriting, going to identify that on the paper written by the person who called at the express office on the 24th of December with the handwriting of Britton and Simpson (now acknowledged to be the same with the respondent), and to the circumstance that Williams on the 5th of January deposited $1,000 in the Citizens' Bank, in the name of James Simpson, and $1,500 in the Bowery Bank, on the 30th of December, in the names of John Britton, Henry Britton, and Mary Britton. The reason for using feigned names was stated by the respondent's counsel to be that he had received this money from lottery offices and for electioneering purposes, which being contrary to the law of the state, he feared he would lose the money if deposited in his own name. Of this reason the jury should judge, as also of the testimony of Lawson and Doyle, lottery dealers, that they had each paid him in the neighborhood of $500 about this time. These men kept no accounts, and had no means of fixing the time, except from recollection. The jury were to consider whether the defendant had explained in a satisfactory manner his possession of this large sum of money in December and January,—he being shown to have worked as a carver for from $6 to $9 a week. Lastly the court received the testimony of Messrs. McMenomy and Hewlet, to prove an alibi; and the evidence of the government in rebuttal. While the experience of courts had led them to regard that species of defence with great suspicion, yet it was the duty of the jury to consider it and give it whatever weight they thought it deserved. They were to say, from all the evidence, whether they were satisfied, beyond reasonable doubt, that the respondent took the letter, as charged, from the post-office; and if they came to that conclusion it was their duty to find him guilty.

After the jury had retired, some discussion arose as to whether the exhibits in the cause should be handed to the jury for inspection. THE JUDGE decided that they should, except one or two, which he thought improper to go to them.

The jury returned after half an hour's absence, with a verdict of guilty.

Later in the day Mr. Dwight moved for sentence in the case of Jas. S. Williams. Mr. Ridgeway, the only one of his counsel who was present, stated to the court that Mr. Busteed was then in the middle of a trial in one of the other courts, and that Mr. Clinton had left court after the jury retired, and he did not know where he was; that there had been no consultation among the counsel for the defence as to what course was best to be pursued, but he moved the court for a stay of proceedings for ten days to enable them to prepare a bill of exceptions.

THE JUDGE said that there were no exceptions taken except upon the merest technicalities; that if there had been any exceptions going to the merits at all, he should feel justified in granting the delay, but as it was, if a motion was to be made for a new trial, he was ready to hear it at once, and would delay five minutes to send for the other counsel.

Mr. Ridgeway said it was not possible to get a counsel in to argue the motion on the spot, and he was not ready to do so himself, and again urged the stay of proceedings, which THE JUDGE refused.